# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Ridge Park Civic      :
Association      :
     :    No. 1159 C.D. 2020
Appeal of: Ridge Park Civic      :    ARGUED: November 15, 2021
Association      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: February 24, 2022**


Objector, Ridge Park Civic Association, appeals for the second time from an order of the Court of Common Pleas of Philadelphia County affirming the decision of the City of Philadelphia's Zoning Board of Adjustment, which granted the application for use and dimensional variances filed by Applicants, David Henderson and Pasquale Bianculli, for a multi-family residential housing project located at 6995 and 6997 Pechin Street in the City's Roxborough section. The present appeal follows our remand in *In re Appeal of Ridge Park Civic Association*, 240 A.3d 1029 (Pa. Cmwlth. 2020) (*Ridge Park I*). Once again, we vacate the trial court's order and remand this matter to the trial court for further proceedings.

The relevant background of this matter is as follows. Applicants seek to build three structures, with three units in each structure, on two lots in an RSA-2 Residential (residential single-family attached-2) zoning district where the Philadelphia Zoning Code (Zoning Code) permits only one principal structure per lot and prohibits multi-family use. Zoning Code § 14-401(4)(a). In addition to

dimensional variances,[1] they also applied for a use variance to build the desired nine units.

At the initial hearing before the Board, Applicants sought to establish undue hardship due to the property's unique circumstances. These included an elongated shape with narrow frontage and geotechnical issues necessitating a costly constructive foundation consisting of a pillar-pier foundation system. Objector's representative testified that nine units was "too much density for the space," having previously suggested that four units would be appropriate. The City Planning Commission's representative opined that nine units was an overuse of the property.

The Board unanimously voted to grant the application, affording great weight to Applicants' undisputed evidence pertaining to the cost of dealing with the challenging geotechnical issues and concluding that the nine units proposed in the initial application satisfied the minimum variance criterion. *Ridge Park I*, 240 A.3d at 1037. In addition, it focused on the qualitative factor that the proposed use would remain residential, and that the appearance of the units would be similar to single-family homes with separate entrances.[2] *Id*. The trial court affirmed without taking additional evidence, stating that the minimum variance criterion was inapplicable to use variances despite the Zoning Code's provision to the contrary. *Id*. at 1031.

In *Ridge Park I*, we vacated the trial court's order and remanded for further proceedings. Noting that Applicants sought a change in the intensity of the permitted residential use of the property but not a change in the nature of the permitted use, we

---

[1] A front setback of forty-seven feet is required whereas Applicants proposed a seventeen-foot setback and a maximum curb cut width of twelve feet is permitted whereas Applicants proposed a sixteen-foot curb cut.

[2] In *Paganico v. Zoning Hearing Board of the Municipality of Penn Hills*, 227 A.3d 949, 956 (Pa. Cmwlth. 2020), we endorsed the board's reliance upon the same qualitative factor in our determination that the board did not err in concluding that the minimum variance criterion was met. *Ridge Park I*, 240 A.3d at 1037.

stated that once the Board concluded that a use variance was necessary to enable the viable economic use of the property under the applicable provision of the Zoning Code, it had to ascertain the extent of any variance authorized. *Id*. at 1035. We detailed the Board's inquiry:

> Unlike the cases in which a use variance entails only a qualitative departure from the terms of the ordinance, this case . . . involves a quantifiable departure. *Here, such a determination entailed ascertaining how many units were necessary for Applicants to build given the cost of developing in an area with undisputed geotechnical issues. In other words, the inquiry required resolution of the factual issue of a reasonable profit and the minimum number of units necessary for it to be economically feasible to proceed.*

*Id*. (emphasis added).

In ascertaining the adequacy of what was done, we stated:

> The Board's factual findings are fully supported and the record makes clear that the property could not be viably developed in accordance with the strict terms of the Zoning Code. Moreover, the factors it cited are clearly relevant and would provide support for its conclusion that the variances are the minimum necessary if they were of the sort lacking any quantifiable measure. *Here, however, in addition to the pertinent qualitative factors, the necessary departure from the measurable requirements must also be established. The trial court did not take additional evidence to amplify the record, apparently because of its erroneous view that the minimization doctrine did not apply to use variances. Given the costs inherent in such a project, including the purchase price and engineering costs related to challenging geotechnical issues, as well as the extraordinary costs for the necessary helical piers, it does not seem unlikely that nine units is the*

3

> *minimum number needed to afford relief. Similarly, the testimony that the farther from the road the townhomes were placed, the deeper the bore for the piers would have to go and the more earth that would have to be displaced, the reduced setback may well be justified. However, we cannot substitute our guess as to what is likely for actual proof.*

*Id*. at 1037-38 (emphasis added). Consequently, we "remand[ed] to the trial court to make appropriate findings as to the quantitative aspects of the minimum variances necessary for this to be a viable project." *Id*. at 1038.

On remand, the trial court once again affirmed without taking additional evidence. In support, it reasoned that the existing record was complete and that there was substantial evidence to support the determination that the granted variances were the minimum necessary to afford relief. Objector's second appeal to this Court followed.

On appeal, the parties' dispute centers on the nature of our remand in *Ridge Park I* and whether the trial court responded appropriately. The remand directive involved ascertaining whether Applicants' plan for exactly nine units satisfied the Zoning Code's requirement that "[t]he variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation at issue[.]" *Ridge Park I*, 240 A.3d at 1032 [quoting Zoning Code § 14-303(8)(e)(.1)(.b)]. Mindful that "the minimum variance criterion is more readily and practically applicable to quantifiable restrictions, such as dimensional requirements . . . , rather than those that are not quantifiable, as are most use restrictions (i.e., types of development)[,]"[3] we nonetheless directed on remand that a factual determination

---

[3] *Ridge Park I*, 240 A.3d at 1033-34 (citation omitted).

be made based on actual proof that nine units is the minimum number needed to afford relief and that the dimensional variances are justified. *Ridge Park I*, 240 A.3d at 1037. In so doing, we reiterated that "whether an applicant satisfies the minimum variance criterion is fact dependent and grounded in an analysis as to whether the accepted evidence constitutes substantial evidence." *Id*. at 1034.

As noted, the burden of submitting actual proof is on Applicants. As they acknowledge, however, "there is no perfect testimony [in the existing record] regarding the proposed nine units being the least minimum variance[.]" (Applicants' Br. at 21.) In that respect, the segment of the transcript that the trial court cites as support for its statement "that the foundation will cost the same amount, no matter how many units are built[,]"[4] is not the equivalent of evidence that the proposed nine units constitutes the least minimum variance. The segment in question, where Applicants' counsel questions general contractor Pasquale Pellicciotti, provides:

> Mr. Pollock [Applicants' counsel]: [T]alking about utilities and everything, do the utilities present a challenge for this development, whether it be one house or whether it be nine homes?
>
> Mr. Pellicciotti: The utilities also will sit on these helical piers. There'll be a channel cut out and there'll be like a concrete encasement, and then a concrete encasement will actually sit on the helical piers and the gas, electric, sewer will run through.
>
> Mr. Pollock: Okay. And that is something that also involves a little bit of engineering. Isn't that correct?
>
> Mr. Pellicciotti: A lot of engineering.
>
> Mr. Pollock: Okay. And that's something that if you were to build the two homes that might be allowed as of right, you'd have to do this --

---

[4] (Jan. 6, 2021 Trial Ct. Op. at 2.)

5

Mr. Pellicciotti: Right.

Mr. Pollock: -- with the helical piers and channeling out for utilities. Is that correct?

Mr. Pellicciotti: That's correct.

(May 17, 2018 Hearing, Notes of Testimony "N.T." at 46-47; Reproduced Record "R.R." at 178a-79a.)

Moreover, while Pellicciotti acknowledged that the utilities would present a challenge for the project whether it be two or nine homes, he did not testify that the number of units was irrelevant to the cost. He testified that the proposed development for 9 units would require a total of 147 piers at $6,800 per pier, and that the costs just for the piers and foundations would be a little less than $1.135 million. (*Id*. at 44; R.R. at 79a.) When pressed as to whether fewer piers would be required for fewer homes, Pellicciotti failed to answer. However, the colloquy between the Board's chairman and Objector's counsel is telling:

> Mr. Klein [Objector's counsel]: You were talking about the cost of these helical piers, how much they cost to dig and put them in. If you built fewer homes[,] you would need less [sic] helical piers. Right?
>
> Chairman DiCicco: Well, I think I asked that same question.
>
> Mr. Klein: Yeah. Correct. If you're doing two structures instead of three it --
>
> Chairman DiCicco: Fewer. Yeah. Obviously, yeah.

(*Id*. at 52; R.R. at 52a.) Notably, Pellicciotti did not refute the Chairman's conclusion.

In sum, while the effort and cost that would have to be expended for the utilities might be the same for two or nine homes, that is not the equivalent of proving

6

that the proposed nine units constitutes the least minimum variance. The trial court's attempt to bootstrap Pellicciotti's testimony in order to arrive at a determination that Applicants satisfied their burden is reflective of the struggle that this Court had in *Ridge Park I*, thereby leading to our determination that despite establishing the many challenges in developing the lots, Applicants did not conclusively prove that nine units was the minimum number necessary to afford relief. Absent actual and more precise proof on that quantitative issue, Applicants simply cannot meet their burden with the requisite substantial evidence. Consequently, we once again remand this matter to the trial court to afford Applicants an opportunity to establish that nine units and no fewer satisfies the minimum variance criterion. If Applicants choose to take this opportunity, then they must present the necessary expert testimony and evidence "required [for] resolution of the factual issue of a reasonable profit and the minimum number of units necessary for it to be economically feasible [for the project] to proceed." *Ridge Park I*, 240 A.3d at 1035.

Accordingly, we vacate and remand this matter to the trial court in accordance with the foregoing opinion.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Ridge Park Civic      :
Association      :
     :    No. 1159 C.D. 2020
Appeal of: Ridge Park Civic      :
Association      :

## **O R D E R**

AND NOW, this 24th day of February, 2022, the order of the Court of Common Pleas of Philadelphia County is hereby VACATED. This matter is REMANDED to the trial court for further proceedings.

Jurisdiction relinquished.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita